1  BENJAMIN B. WAGNER
   United States Attorney
2  KEVIN C. KHASIGIAN
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700

5  Attorneys for the United States

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              1:14-CV-01999-JAM-SAB

12                Plaintiff,               AFFIDAVIT OF SPECIAL AGENT
                                           BRADLEY A. DICKEY IN SUPPORT OF
13         v.                              ORDER REGARDING CLERK'S
                                           ISSUANCE OF WARRANT FOR ARREST
14  APPROXIMATELY 3,804 FIREARMS,          OF ARTICLES *IN REM*

15                Defendant.

16

17

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

FILED

JAN 15 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
    DEPUTY CLERK

## AFFIDAVIT OF BRADLEY DICKEY

I, Bradley Dickey, being duly sworn under oath, depose and state the following:

1.     I am a Special Agent in the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed with ATF for approximately one and a half years and have graduated from the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. My training at the academy provided me with a base of knowledge in investigative activities pertaining to criminal violations relating to firearms, explosives, arson, violent crime, criminal street gangs and narcotics. Specific techniques which I have been trained in include but are not limited to interviewing, physical surveillance, the execution of search warrants, and the arrest of criminals. In addition, I was a police officer at the United States Supreme Court Police Department from 2011 to 2013 where I received additional training and experience in law enforcement practices and have completed the Uniformed Police Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.     This affidavit is made in support of a warrant for arrest of Approximately 3,804 Firearms (hereafter "defendant firearms"). The defendant firearms constitute property involved in or used in any . . . willful violation of 18 U.S.C. § 922(a)(1)(A). As a result of the foregoing, the defendant firearms are subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d)(1).

3.     The facts set forth in this affidavit are known to me as a result of my personal observations, observations of other law enforcement officers, through conversations with other agents and/or detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of the investigation and I have determined the following:

## BACKGROUND

**Definition of a Firearm**

4.     Title 18, United States Code, Section 921(a)(3) defines a "firearm" as "any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." This definition includes "the frame or receiver of any such weapon," and "any combination of parts either designed or intended" from which a firearm can be "readily assembled." A "receiver"

1 under this statute includes a "lower receiver."

2 **The AR-15 Platform**

3    5.    An AR-15 is the semi-automatic, civilian-version of the .223-caliber M16 machinegun
4 used by the United States military. Although "AR-15" specifically refers to the model produced by
5 firearms manufacturer Colt, the term "AR-15" is colloquially used to refer to firearms similar to, and
6 based on, the Colt AR-15. An example of an AR-15 is depicted below.



15    6.    The AR-15 style rifle is a two-part system generally comprised of a lower and an upper
16 receiver. The lower receiver is classified as a firearm because it provides the housing for the hammer and
17 the firing mechanism, and contains mounting points for the upper assembly which accepts the barrel and
18 houses the bolt or breechblock. The major parts of an AR-15 style rifle are labeled below.



*Photo of AR-15 rifle (labeled) (photo unrelated to this case)*

27 ///
28 ///

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

1    7.    Depicted below is a firearm that has been disassembled to isolate the individual parts.



*Photo of AR-15 rifle (disassembled) (photo unrelated to this case)*

14   8.    Generally, most parts for a firearm (e.g. stocks, barrels, magazines) are not subject to
15  domestic firearms licensing regulation by ATF. Accordingly, these parts are often made by individuals
16  and small businesses and can be bought and sold without reporting the sales and without requiring a
17  background check.

18   9.    The lower receiver is different than common gun parts. A lower receiver is considered a
19  "firearm," without any other parts at all. The lower receiver is a receiver and is regulated and controlled
20  by ATF the same way as a completed weapon. Specifically, the manufacture, sale, transfer, and
21  disposition of lower receivers are regulated by ATF. Depicted below is a lower receiver for an AR-15-
22  style rifle:

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

4



*Photo of AR-15 lower receiver (photo unrelated to this case)*

10.    Individuals attempting to circumvent the regulations often manufacture lower receivers for AR-15s, but use several self-serving terms to describe the firearms, such as "blank," "80%," "80% blank," "80% lower," and "AR-15 80%," among other intentionally ambiguous terms. These terms developed based on the perception that the piece of metal or polymer was 80% of a firearm, and therefore unregulated by ATF. The term "80%" and variations of it are not used by ATF and are not officially recognized by ATF.

11.    In the case of the defendant firearms, the manufacturers created Kevlar reinforced polymer lower receivers with certain cavities filled by different colored polymer. (Depicted in a picture at paragraph 14.) These lower receivers are made functional through the use of specialized tools, typically a drill press or a hand drill, a Dremel tool (a versatile, handheld rotary bit tool that can be used to cut, grind, drill, sand, and mill various materials), and other various types of milling equipment. These tools are readily available at most hardware/home improvement stores.

12.    Using a drill press or a hand drill, the equipment operator drills, cuts, or mills cavities in specific locations on the AR-15 lower receiver. This process finishes the manufacture of the AR-15 lower receiver by creating the precise shape and space necessary for the lower receiver to accept the parts that will allow the firing of a projectile. If these shapes or cavities are not formed to certain specifications, the firearm will not function and may break. This process also creates the holes necessary to attach the upper receiver and barrel to the lower receiver. These parts (e.g. the hammer, bolt, and

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

1  firing mechanism) are the internal mechanical parts that combine with a trigger, firing pin, and other parts

2  to form a functioning firearm.

3  **AR-15 lower**
4  **receiver prior to**
   **milling**
5



6                                                         **AR-15 lower**
7                                                         **receiver after**
                                                          **milling**
8

9

10

11

12

13  *Photos - (clockwise from top left) AR-15 lower receiver, AR-15 lower receiver, AR-15 lower receiver*
                                    *(top view)  (photos unrelated to this case)*
14

15      13.     The defendant firearms are AR-15 lower receivers that are made of Kevlar reinforced

16  polymer. The polymer products in this case are molded during the manufacturing process. During the

17  molding process, the manufacturer has made the material in the fire control cavity (further referred to as

18  the plug) a different color than that of the main body of the receiver. This difference in color enables the

19  customer to easily identify how much material to mill away thereby creating the specific and exact

20  cavities that are necessary to enable the weapon to function properly. Below is an example of one of the

21  AR-15 lower receivers as it appears before the milling process.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///



14. The ATF Firearms Technology Branch ("FTB") provides expert technical support to ATF, other Federal agencies, state and local law enforcement, the firearms industry, Congress and the general public is the specific office within the ATF that examines and classifies firearms in accordance with the definition provided in 18 U.S.C. § 921(a)(3)(A). The FTB has reviewed the AR-15 lower receivers seized in this case and classified them as "firearms" as defined by that section of Title 18. This determination is based on the following facts: the material comprising the main body of the lower receiver is formed at a different time in the manufacturing process than the material that comprises the plug, thus, when the fire control cavity is formed, the casting reaches a point in the process to be classified as a "firearm"; the purpose of the insert – the white polymer material above – is to index[1] the fire control cavity; and a second indexing exists because the receivers contain excess exterior material that indicate the selector, the trigger pin, and hammer.

15. Unlike a firearm manufactured by a licensed manufacturer, these AR-15 lower receivers were manufactured without a serial number or manufacturer identification. They are untraceable. Additionally, although classified as firearms by ATF, the AR-15 lower receivers were not sold as

---

[1] Indexing is placing a marking on the receiver that shows where to drill in order to make a fully functional receiver.

firearms,[2] thus record keeping requirements were not followed and no federal or state background checks were conducted on the individual purchasers. As a result, these firearms may have been sold to convicted felons or other prohibited persons.

## **FACTUAL ALLEGATIONS**

16.     Since at least January 2014, the ATF has investigated the unlawful manufacture, transportation, transfer, possession, and sale of AR-15 lower receiver firearms in the Eastern District of California, and other places. The investigation has focused on unlicensed manufacturers of lower receiver firearms; the manufacture of such firearms without identifying information (such as a serial number) which can be used to trace a weapon should it be involved in a violent crime; the sale of such firearms without conducting the required background check; the sale of such firearms without any documentation related to the sale; receipt or possession of such firearm which is not identified by a serial number; and the transportation, delivery, or receipt of any such firearm in interstate commerce, which has not been registered as required.

17.     The ATF's investigation revealed that a business in Bakersfield, California was manufacturing and selling unserialized AR-15 polymer lower receiver firearms from its retail store in Bakersfield and over the internet from its online store. The business is owned by an individual named Christopher Cook ("Cook") and operated under various entity names, including EP Armory, EP Lowers, EP Arms, and The Armory. During the investigation, undercover law enforcement officers have conducted controlled purchases of approximately forty-one such illegally manufactured firearms.

**Undercover Controlled Purchase – Fresno County Gun Show**

18.     On January 25, 2014, ATF agents attended the Fresno County Gun Show in Fresno, California and purchased two lower receivers from an individual identified herein as "Person A." It

---

[2] The polymer AR-15 lower receivers are often sold by licensed dealers who do not have a manufacturing license and who are well aware of the regulated nature of the firearm industry. The individual seller described herein had an ATF dealer's license to sell firearms under a specific entity, but did not have a manufacturer's license. That individual designed, developed, and sold the AR-15 lower receivers on the internet under a separate business name with no ATF license (dealer or manufacturer). This single retail store coupled the "licensed business" of selling firearms and firearm parts with the "unlicensed business" of selling polymer AR-15 lower receivers.

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

appeared as though Person A's lower receivers had been created with a different color polymer in the fire control region to make it easier for the customer to finish the milling process. Person A's booth at the gun show displayed a banner for his gunsmithing business. The booth also advertised for Cook's website, EPLOWERS.com.

19. At the gun show, ATF undercover agents purchased two lower receiver firearms from Person A for a total of $140.00. On January 27, 2014, the two lower receivers were sent to ATF's Firearm Technology Branch for examination. On January 29, 2014, the Firearm Technology Branch confirmed that the two lower receivers purchased from Person A at the gun show were classifiable as firearms.

20. After the sale, ATF agents investigated the website www.eplowers.com and determined that www.eplowers.com automatically forwarded to the website www.eparmory.com. A review of www.eparmory.com revealed numerous firearm products for purchase, including lower receivers that closely resembled the pre-manufactured AR-15 polymer receiver firearms purchased at the gun show.

**Undercover Controlled Purchase – Phone Order**

21. On February 1, 2014, undercover ATF agents placed a recorded telephone call to Person A inquiring about the pre-manufactured AR-15 polymer lower receivers. Person A told the undercover agent that if he/she purchased ten or more receivers, the price would be $50.00 each, plus shipping, and the product(s) would be sent in the mail. During the call, Person A identified EP Lowers as his supplier for AR-15 polymer lower receivers.

22. On February 5, 2014, the undercover agent ordered twenty AR-15 polymer lower receivers from Person A, providing a credit card number to complete the purchase. The twenty receivers cost $1,055.75. On February 12, 2014, ATF agents received a package from Person A containing the twenty polymer lower receivers ordered on February 5, 2014. None of the twenty lower receiver firearms possessed the required markings, such as a serial number or manufacturer name.

///
///
///

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

## Cook's Licensing Status and ATF's Notification that EP Armory's AR-15 Lower Receivers are Firearms

23. At all times herein mentioned, Cook never applied for or was granted a manufacturer's license from ATF, specifically, an O7 FFL licensee that requires manufacturers to mark the firearms they manufacture in accordance with applicable laws, maintain the proper reeordkeeping, and initiate background checks on certain purchasers. Cook held only a FFL O1 license, which allowed him to sell firearms (a dealer's license), but not manufacture them. That dealer's license was issued to Cook, doing business as Suburban Armory, on March 8, 2013. When the license was issued, Cook ran the business from his residence in Bakersfield, California, but on January 31, 2014 changed the address on the dealer's license to a retail store at 7400 District Boulevard, Suite A, Bakersfield, California.

24. A database search of FFL licenses reveals that EP Armory does not hold any type of FFL license.

25. To become a FFL, Cook received training and information from the ATF regarding the regulations requiring special licensing for the manufacture of a firearm; the required identifying information (such as a serial number) for a firearm; the required background check necessary as part of the sale of a firearm; the required documentation necessary for the sale of a firearm; the unlawfulness of the receipt or possession of a firearm which is not identified by a serial number; the unlawfulness of the transportation, delivery, or receipt of a firearm in interstate commerce which has not been registered as required; the unlawfulness of the possession of a firearm transferred in violation of the above; the unlawfulness of the possession of a firearm which was manufactured in violation of the above; the unlawfulness of the receipt of or possession of a firearm which was not registered to the possessor; and the unlawful transfer of a firearm.

26. The investigation into Cook and EP Armory revealed that EP Armory's attorney sent correspondence to the FTB in July 2013 seeking a determination on whether the item that Cook had designed and manufactured was a "firearm" under applicable laws. The correspondence included an exemplar of a polymer based product that had a filled cavity in the fire control region which had been created with a different color polymer.

///

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

27.     On February 7, 2014, undercover ATF agents accessed the www.eparmory.com website. On the site, EP Armory offered lower receiver firearms for sale with the following descriptions: "80% AR-15 lower receivers," "make your own AR-15 without the hassle of serial numbers and registration," and "easily build your own AR-15 at home with general tools."

28.     On February 13, 2014, a determination letter was delivered from FTB to EP Armory's attorney. The letter indicated that the lower receivers/AR-15 lower receivers designed and manufactured by EP Armory are classified as firearms as defined by 18 U.S.C. § 921(a)(3). Cook, through his attorney in a letter dated March 4, 2014, asked the FTB to reconsider its ruling that the AR-15 polymer lower receivers were firearms under 18 U.S.C. § 921(a)(3). The FTB declined to reconsider that determination.

**Undercover Controlled Purchase – EP Armory Website**

29.     Undercover ATF agents purchased six AR-15 polymer lower receivers off www.eparmory.com, utilizing only the website's sale functionality. The six firearms cost a total of $333.25, and the package contained a return shipping address for EP Armory, 7850 White Lane, Suite E271, Bakersfield, CA 93309 (an address corresponding to a box at a mail store). The EP Armory website did not request the ATF Agent's personal information; did not initiate a background check; did not complete the ATF Form 4473; and the six lower receiver firearms, once received in the mail, did not possess the required markings, such as a serial number or manufacturer name.

**Undercover Controlled Purchase - EP Armory Website**

30.     On February 14, 2014, undercover ATF agents again accessed the www.eparmory.com website and purchased one AR-15 polymer lower receiver. Agents received the lower receiver on February 20, 2014, with a return shipping address for EP Armory, 7850 White Lane, Suite E271, Bakersfield, CA 93309. Similar to the prior purchase from the same website, EP Armory did not request the ATF Agent's personal information; did not initiate a background check; did not complete the ATF Form 4473; and the lower receiver, once received in the mail, did not possess the required markings, such as a serial number or manufacturer name.

///

**Conversion of an EP Armory Lower Receiver to a Functional Rifle**

31.     On February 18, 2014, ATF agents milled out a polymer receiver firearm previously purchased from the gun show using a Dremel tool, a flat head screwdriver, a hammer, and a hand operated power drill. This process took approximately one-to-two hours. On February 19, 2014, the undercover agents contacted Person A to ask if he could build a complete AR-15 firearm using the milled out lower receiver. Person A told the ATF agent that "the law wouldn't allow him to do that," but if the undercover agent came to Person A's house the next day, his relative may be available to assist him/her.

32.     The undercover agent went to Person A's residence the next day, bringing with him/her the milled out AR-15 lower receiver and remaining parts necessary to make the firearm fully functional, including an AR-15 trigger assembly parts kit, an AR-15 pistol grip assembly parts kit, a bullet button, and an AR-15 upper receiver. Once at the house, the relative assisted the undercover agent in assembling a functional AR-15 firearm from the milled out AR-15 lower receiver and the parts kits, using a drill press and other tools in the shop. This process took approximately one-hour to one and one-half hours.

**Undercover Controlled Purchase – Cook Storefront**

33.     On February 20, 2014, undercover ATF agents visited Cook's retail store at 7400 District Boulevard, Suite A, Bakersfield, California. The store contained various items for sale, including firearms, firearm parts, and firearm paraphernalia, and its exterior signage separately promoted "EP ARMORY" and "THE ARMORY." Cook was present at this time and engaged the agents in a discussion about the manufacturing process of the AR-15 polymer lower receivers. At the conclusion of that conversation, the undercover agents purchased eleven AR-15 polymer lower receivers and one AR-15 parts kit – parts allowing the agents to assemble a complete rifle, other than the bullet button.

34.     For this transaction, Cook did not request the ATF Agent's personal information; did not initiate a background check; did not complete the ATF Form 4473;[3] and the AR-15 polymer lower receivers did not possess the required markings, such as a serial number or manufacturer name.

---

[3] Upon transfer of a firearm to a person who does not hold an FFL, the licensee transferring the firearm is required to execute a Firearms Transaction Record (ATF Form 4473) and to initiate a background check on the non-licensed individual in accordance with 18 U.S.C. §§ 922(t) and 923(g)(1)(A) and 27 C.F.R. §§ 478.102 and 478.124, among other applicable laws.

1  However, Cook had the undercover agent sign a form attesting that the agent was not prohibited from
2  possessing a firearm and that he would not transfer the firearm.

3      35.    Before the agents departed EP Armory, Cook mentioned several instructional videos
4  available on YouTube that assisted in the milling process. A later examination of Cook's website,
5  www.eparmory.com, revealed links to various videos promoting the company and the AR-15 polymer
6  lower receivers.

8  **Execution of Federal Search Warrants and Interview of Christopher Cook**

9      36.    On March 7, 2014, ATF agents executed federal search warrants at EP Armory's retail
10 store at 7400 District Boulevard, Suite A, Bakersfield, California, and Cook's personal residence in
11 Bakersfield. During the search of EP Armory, agents seized 3,772 of the defendant firearms. Agents
12 seized two of the defendant firearms from Cook's residence.

13     37.    ATF agents interviewed Cook regarding his manufacture and sale of the AR-15 polymer
14 lower receiver firearms. During the interview, Cook admitted to developing the process and design for
15 the AR-15 polymer lower receivers seized from his store, which are identical to the lower receivers ATF
16 agents purchased from EP Armory's website and Person A (at the gun show and over the phone). Below
17 are examples of the lower receivers seized from EP Armory on March 7, 2014:



27     38.    When asked about his manufacturing partners, Cook identified a business hereinafter
28 referred to as "Company A," located in Southern California, as the business he hired to manufacture the

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

1 AR-15 polymer lower receiver firearms. Cook stated that "the molds" are all located at Company A.

2       39.    During the search ATF Agents noticed a sticker affixed to several AR-15 polymer lower
3 receivers that identified a business hereinafter referred to as "Company B." When asked about Company
4 B, a Southern California gun retailer, Cook acknowledged the business distributed his polymer AR-15
5 lower receiver firearms.

6       40.    ATF agents also asked Cook why he did not stop selling the polymer receiver firearms
7 after he received the ATF's determination that his AR-15 polymer lower receivers were classified as
8 firearms, to which he responded "That I can't even answer right now."

9

10                 **Rollover Seizures of Defendant Firearms**

11       41.    Following the initial seizures at EP Armory, ATF agents seized additional defendant
12 firearms from locations in Valencia and Bakersfield, California. On March 13, 2014, ATF agents seized
13 sixteen of the defendant firearms from Company A's business location in Valencia, California. On April
14 2, 2014, and April 30, 2014, ATF agents seized a total of twelve of the defendant firearms from 7400
15 District Boulevard, Suite A, Bakersfield, California.

16

17         **Summary of Post-Search Warrant Interviews and Document and Database Reviews**

18       42.    On March 7, 2014, ATF agents interviewed Person A and he acknowledged that Cook
19 supplied him with the AR-15 polymer lower receivers he sold to undercover agents.

20       43.    On March 13, 2014, ATF agents interviewed the owner of Company A. The owner said
21 that Cook came to their office in January 2013 looking for an affordable plastics manufacturing
22 company. During initial talks, Cook brought an aluminum "80% receiver," blue prints, and paperwork
23 that had the appearance of making the new product "legal". The owner of Company A profiled the
24 molding process and stated that his company did not serialize the receivers produced at their facility. A
25 database search of FFL licenses reveals that Company A does not possess the necessary FFL
26 manufacturing license.

27       44.    According to records reviewed in this case, from July 30, 2013 to February 28, 2014,
28 Company A manufactured approximately 40,000 polymer lower receivers for Cook, and charged him

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest

1 only $6.75 each.

2     45.    A review of EP Armory business records reveals that Cook and EP Armory utilized

3 approximately fifty-five independent dealers to distribute and sell the AR-15 polymer lower receivers

4 designed by Cook. The fifty-five independent dealers were located across the United States, in at least

5 ten different states.

6     46.    A review of databases containing completed ATF Forms 4473 and background checks,

7 revealed that neither Cook, nor any of his businesses, nor Company A, executed ATF Forms 4473 nor

8 initiated the required background checks as part of the sale or transfer of the AR-15 polymer lower

9 receiver firearms.

10     47.    Based on the foregoing, I have probable cause to believe that the defendant firearms were

11 involved in or used in any willful violation of 18 U.S.C. § 922(a)(1)(A). It is respectfully requested that a

12 Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime

13 Claims and Asset Forfeiture Actions Rule G(3)(h)(i), be issued for the defendant firearms listed above.

14

15 BRADLEY DICKEY
Special Agent
16 Bureau of Alcohol, Tobacco, Firearms and
Explosives
17

18

19 Sworn to and Subscribed before
me this ___ day of January, 2015.

20

21 Honorable STANLEY A. BOONE
22 United States Magistrate Judge

23 Reviewed and approved as to form

24

25 /s/ Kevin C. Khasigian
Kevin C. Khasigian
Assistant U.S. Attorney
26

27

28

Affidavit of Special Agent in Support of Order Re
Clerk's Issuance of Warrant for Arrest